argument does not relate to how or why the enforcement of the Archer Award would impact the outcome of this case. Thus, the district court properly determined that the Union's counterclaim to have the Archer Award enforced is moot.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0085P (6th Cir.)
File Name:  00a0085p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

WYANDOT, INC.,

*Plaintiff/
Counter-Defendant-Appellee,*

*v.*          No. 99-5013

LOCAL 227, UNITED FOOD AND COMMERCIAL WORKERS UNION,

*Defendant/
Counter-Plaintiff-Appellant.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 97-00785—John G. Heyburn II, District Judge.

Argued:  December 7, 1999

Decided and Filed:  March 9, 2000

Before:  COLE and GILMAN, Circuit Judges; CARR,
District Judge.[*]

———————

[*] The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

1

———————————

**COUNSEL**

———————————

**ARGUED:** Jonathan D. Karmel, KARMEL & GILDEN, Chicago, Illinois, for Appellant.   David B. Sandler, GREENEBAUM, DOLL & McDONALD, Louisville, Kentucky, for Appellee. **ON BRIEF:** Jonathan D. Karmel, KARMEL & GILDEN, Chicago, Illinois, for Appellant. David B. Sandler, GREENEBAUM, DOLL & McDONALD, Louisville, Kentucky, for Appellee.

———————————

**OPINION**

———————————

JAMES G. CARR, District Judge.  This is an appeal from a labor arbitration. Wyandot, Inc. (the "Company") filed suit in the district court to vacate the arbitration award of Arbitrator Fred Witney (the "Witney Award"), which reinstated discharged union member, Sue Pollard. United Food and Commercial Workers Union, Local 227, (the "Union") counterclaimed to enforce the Witney Award and also to enforce the arbitration award of Arbitrator Edward Archer (the "Archer Award"), which required the Company to remove absences charged against employees for missed work due to a snow day.  The district court vacated the Witney Award and found the Archer Award to be moot regarding the issues presented in this case.  The Union appeals pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  For the following reasons, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

**I.   The Witney Award**

The Witney Award involved the discharge of Sue Pollard, a member of the Union, who was terminated for excessive absences.   Under the express terms of the Collective

case of misinterpretation to which the court must defer.  This is a case of no interpretation.  Indeed, this is a case where the Arbitrator ignored the plain language of the Agreement.

Fourth, the district court appropriately found that the Witney Award was based on general considerations of fairness and equity instead of the precise terms of the Agreement.  Although Arbitrator Witney avoided using the terms "fairness" and "equity" in his award, the district court concluded that these motivations must underlie the arbitrator's decision to ignore the Agreement's deadlines requirements.  Here, the Arbitrator not only ignored the Agreement's deadlines, he did so while acknowledging that the Company did not waive the deadlines and had not been lax in enforcing them.

In sum, all of the four *Dobbs* factors were violated in this case.  Thus, based on the undisputed facts, it is clear that Arbitrator Witney's decision departed from the essence of the Agreement and was properly vacated by the district court.

**III.   Did the District Court Err in Finding the Archer Award to be Moot?**

The Union contends that the Archer Award, issued six months before the Witney Award, must be enforced because the Company allegedly ignored the decision. The Company, however, maintains that the Archer Award does not affect Pollard's discharge because Pollard still accumulated enough absences from work — not including the day at issue in the Archer Award — to be discharged under the Company's attendance policy.

After the district court vacated the Witney Award rendering Pollard's grievance barred from arbitration, the district court held that enforcement of the Archer Award would have no impact on the outcome of this case because the merits of Pollard's grievance would never be reached.  On appeal, the Union argues that the issue is not moot because the Union is entitled to attorney's fees incurred from re-litigating the Archer Award during the Witney arbitration.   But this

decision conflicts with the express terms of the Agreement, and thus fails to draw from the essence of the Agreement.[5]

Second, the district court correctly determined that the Witney Award imposes additional requirements not explicitly provided for in the Agreement. The award requires the Company to accommodate all written demands for arbitration. This contradicts the deadlines provided in the Agreement, not to mention Arbitrator Witney's own conclusion that the deadlines are mandatory, and imposes additional requirements on the Company.

Third, the district court accurately concluded that the Witney Award is not rationally derived from the terms of the Agreement. Witney provided no support in the Agreement for finding the grievance arbitrable. He refers to no provision supporting his view that the July 1st letter cured the deadline problems. Rather, he merely concludes that the letter is "clear and unmistakable notice."

The language in the Agreement regarding written notice to the Company gives special weight to missing deadlines. A missed deadline creates a conclusive presumption that the Union accepts the Company's answer to the grievance. (*See* Section 6.1, Step D). Conclusive presumptions cannot be overcome by any amount of evidence to the contrary. Further, the Arbitrator's "cure" of the deadline is not rationally derived from the terms of Agreement. In fact, the letter and the effect the Arbitrator gave to it contradicts the clear terms of the Agreement. This, as the district court noted, is not a

---

[5]During oral argument, the Union contended that because the practice of commencing discharge cases at Step C rather than Step A was not explicitly written in the Agreement, the Arbitrator was interpreting ambiguous contract terms when he found the July 1st letter to be sufficient notice. Although, if true, this would require the district court to affirm Arbitrator Witney's Award, this is not what happened. Rather than finding any ambiguity, Arbitrator Witney explicitly determined that the time deadline for filing Pollard's grievance was not met, but nevertheless concluded that the letter "cured the defect." In other words, the arbitrator ignored the explicit time limit set forth in the Agreement.

Bargaining Agreement (the "Agreement") between the Company and the Union, a grievance protesting a discharge must be filed in a timely manner or the grievance is barred. The Agreement provides in pertinent part:

## Article 6

### GRIEVANCE PROCEDURE AND ARBITRATION

**Section 6.1**   Any dispute, complaints or grievances arising from alleged violations of the Agreement by the Company shall be settled and determined through the following procedure:

Step A:   Any Employee and/or steward having a grievance will first attempt to adjust same by conference between the Employee and/or steward involved and his or her Area Manager.

Step B:   If a grievance is not settled in Step A of the grievance procedure, the Employee will next attempt to adjust same with his or her steward and the Department Manager.

Step C:   If a grievance is not settled in Step B of the grievance procedure, then *it shall be reduced to writing* and the aggrieved Employee, the Steward, and a Union Representative . . . and a designated representative of the Company . . . shall then attempt to settle the grievance.

Step D:   If the grievance has not been satisfactorily settled and *if the grievance is otherwise arbitrable* under this Agreement, *it may be referred to arbitration . . .*

**Section 6.2**   Any disputes, complaints or *grievances* arising from alleged violations of this Agreement by the Company *shall be deemed, considered and held to have been waived unless the same are presented* for

settlement and determination of Step (A)[1] of the Grievance Procedure of this Agreement *within five (5) working days* from the date on which said dispute, complaint or grievance first arose.  \*\*\*

**Section 6.6**  *All time limits for the processing of grievances, up to and including the actual appeal in writing to arbitration, shall be deemed mandatory requirements and the failure to comply with such specified time limits shall cause the grievance to be barred and considered completely disposed of from the standpoint of the Company, the Union and the Employee or Employees involved.*  However, it is understood that the parties, through mutual agreement, may extend or waive the time limits of any of the above-mentioned steps of the grievance procedure.

**Section 6.7**  The function of the Arbitrator shall be of a judicial rather than a legislative nature. *The Arbitrator shall not have the authority to add to, ignore or modify any of the terms or provisions of the Agreement. The Arbitrator shall never in any degree or to any extent substitute his judgment for the Company's judgment,* and where matters of judgment are involved (if the case is otherwise arbitrable under this Agreement) he shall be limited to deciding whether or not the Company acted capriciously or in bad faith.  . . .  *Subject to the foregoing qualifications and limitations, the Arbitrator's award shall be final and binding* upon the Company and the Union and the aggrieved Employee or Employees.

**Section 6.8**  If the Union fails, refuses, or declines to prosecute a grievance on behalf of an Employee, or if the Company and the Union settle any grievance on behalf of an Employee hereunder, the Employee who has filed such grievance or on whose behalf it has been filed shall

---

[1]It is undisputed that, in a discharge situation, the parties commence the grievance procedure at Step C instead of Step A.  (J.A. 185).

**Section 6.7**  The function of the Arbitrator shall be of a judicial rather than of a legislative nature.  The Arbitrator shall not have the authority to add to, ignore or modify any of the terms or provisions of the Agreement.

In the instant matter, the district court did not substitute its judgment for the judgment of the arbitrator. Rather, it applied the *Dobbs* factors and properly found that Arbitrator Witney's decision departed from the essence of the Agreement.

First, the district court held Witney's decision conflicted with the express terms of the Agreement. The July 1, 1996 letter, on which Witney relied to find the grievance arbitrable, is inconsequential to the determination of whether the Pollard grievance was timely filed. Although Witney decided that the letter clarified the Union's intention to arbitrate Pollard's grievance, the fact remains that *the notice was too late.*

Under the express terms of the Agreement, the grievance was required to be submitted within five working days of Pollard's termination on May 31, 1996. The failure to comply with such times limits "shall cause the grievance to be barred and considered completely disposed of from the standpoint of the Company, the Union and the Employee." Nowhere in the Agreement is there a provision allowing a grievant to circumvent the time deadline by letter of intent.

The July 1st letter — submitted over a month after Pollard's termination — clearly does not conform to this requirement.[4] Indeed, Witney recognized that the letter itself did not meet the time limits set forth in the Agreement. But then, without a reasoned explanation, Witney concluded that the letter somehow cured the defect regarding time deadlines. Based on these undisputed facts, it is clear that the arbitrator's

---

[4]Even if the ten-day deadline applied from Section 6.1 of the Agreement, the July 1, 1996 letter was too late.

agreement, not the court's construction, to which the parties have agreed. *See Misco*, 484 U.S. at 37-38. Indeed, an arbitrator's factual errors and even misinterpretation of a collective bargaining agreement are not subject to reconsideration by the court. *Id.* at 36. Accordingly, the arbitrator's decision will be upheld if it "draws its essence from the collective bargaining agreement," *see* Discussion Part I, *supra*, and is not merely the arbitrator's "own brand of industrial judgment." *United Steelworkers of Am. v. Enterprise Wheel & Car Co.*, 363 U.S. 593, 597 (1960).

An arbitrator, however, does not have unfettered discretion. An "arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." *Dobbs, Inc. v. Local 614, Int'l Brotherhood of Teamsters*, 813 F.2d 85, 86 (6th Cir. 1987). When an arbitrator disregards the collective bargaining agreement and its terms or departs from arguably construing the contract, the court must vacate the award. The Sixth Circuit in *Dobbs* identified four ways in which an arbitrator may depart from the essence of the agreement:

> (1) an award conflicts with express terms of the agreement; (2) an award imposes additional requirements not expressly provided in the agreement; (3) an award is without rational support or cannot be rationally derived from the terms of the agreement, or (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement.[3]

*Dobbs*, 813 F.2d at 86 (quoting *National Gypsum Co. v. United Steelworkers of Am.*, 793 F.2d 759, 766 (6th Cir. 1986)). The requirements set forth in *Dobbs* also are reflected in part in the language of the Agreement:

---

[3]Although the district court found that all four of the *Dobbs* factors were present in this case, only one is required to find that the arbitrator departed from the essence of the agreement.

thereafter be estopped to revive or further prosecute said grievance.

(J.A. 38-39) (emphasis added).

John Holzapel, the Company's Human Resource Manager, mailed a letter to Sue Pollard on May 31, 1996, notifying her that her employment was terminated because of a violation of the Company's Attendance Policy. (J.A. 176). Although Pollard received the termination letter on June 1, 1996, no written grievance was presented to the Company until June 18, 1996. (J.A. 177). Under the Agreement Pollard was required to present her grievance in writing within five (5) working days of receiving notification of her discharge — *i.e.*, five working days after June 1, 1996. (J.A. 157, 185).

On June 14, 1996, a meeting was scheduled to discuss two other grievances. (J.A. 185). Alex Hernandez, the Union's business representative, and Ben Campbell, the Chief Union Steward, represented the Union at the meeting. (*Id.*). Pollard also appeared at the meeting. (*Id.*). Although Holzapel was surprised to see Pollard, he agreed to listen to what the Union had to say while making it clear that the Company did not agree to waive the time limits for her grievance. (*Id.*). In fact, Hernandez asked Holzapel during the meeting to consider waiving the time limits, but Holzapel refused. (*Id.*). Moreover, at the meeting — thirteen days after Pollard received her termination letter — the Company still had not received a written grievance regarding Pollard's termination. (*Id.*).

Seventeen days after Pollard received her termination letter, on June 18, 1996, the Union submitted a written grievance on her behalf. (*Id.* at 185-186). In response, the Company informed the Union in writing that the grievance was not filed in accordance with the time deadlines set forth in the Agreement and therefore would be denied:

> Grievance 5316, pertaining to Sue Pollard (termination), was not submitted in a timely manner, therefore, grievance is denied. Sue Pollard was terminated on

5/31/96. Grievance was not submitted to Company until 6/18/96.

In addition, the Company denied two other grievances in the same letter because neither had been submitted in a timely manner under the grievance procedure of the Agreement.

On July 1, 1996, the Union mailed a letter to the Company advising it that the Union still was submitting Pollard's grievance to arbitration. (*Id.*). Pollard's grievance was then presented to Arbitrator Fred Witney. Two issues were raised at the hearing: (1) whether the grievance was arbitrable; and (2) if so, whether Pollard was terminated for just cause. At arbitration, the Company maintained that Pollard's grievance was untimely, while the Union asserted that Pollard's discharge did not conform to the Company's No-Fault Attendance Policy.

Arbitrator Witney issued an Award on October 20, 1997, reinstating Pollard. Witney recognized that the Company discharged Pollard effective on May 31, 1996 and that the written grievance protesting her discharge was not filed until June 18, 1996. In addition, Witney acknowledged that "[t]here is no showing that Wyandot has been lax in the enforcement of the time limits. Likewise, no testimony was offered by either side to show that time limits were either waived or extended in this case." (*Id.* at 186). Nevertheless, the Arbitrator deemed the Agreement deadlines inapplicable:

> As said, Wyandot discharged Pollard effective May 30, 1996. ***Accordingly, she or the Union had five (5) days (Section 6.2) or ten (10) days (Section 6.1) Step D to file the grievance.*** Since it was not submitted until June 18, 1996, the Company asserts the grievance was not timely and thus not arbitrable. To be sure about it, the Arbitrator fully understands the position of the Company. Scores of decisions demonstrate that enforcement of time limits has frequently been upheld by many arbitrators. Indeed, the published and unpublished cases of the instant Arbitrator are proof positive of his understanding that time limits hold a venerable place in the arbitration

should be left to the arbitrator." *Id.* (emphasis added); *see also Misco*, 484 U.S. at 39-40 (same).

Accordingly, the Union's reliance on the "procedural" standard of review set forth in *Misco* is misplaced. In *Misco*, the matter at issue was subject to arbitration, and — after finding that the matter was arbitrable — the Supreme Court reviewed the arbitrator's "procedural" decisions relating to the merits of the dispute. In the instant matter, the Company challenges whether the matter is arbitrable. The district court found that the Pollard dispute was not arbitrable and therefore never examined the arbitrator's "procedural" decisions. Thus, the standard of review set forth in *Misco* is not applicable to the instant matter.[2]

In sum, the district court applied the proper standard of review in vacating the Witney Award. Namely, the court examined whether the Pollard grievance was arbitrable by determining whether the Witney Award drew its essence from the Agreement. *See Interstate Brands*, 909 F.2d at 890-891 (rejecting Union's contention that an arbitrator's decision regarding arbitrability is reviewed under the *Misco* "affirmative misconduct" standard and holding that the proper standard of review requires the court to determine whether the decision draws its essence from the collective bargaining agreement).

## II.   Did the District Court Substitute its Interpretation of the Agreement for That of Arbitrator Witney?

The Supreme Court has made clear that courts must give an arbitrator's decision substantial deference because it is the arbitrator's construction of the collective bargaining

---

[2]Moreover, it is important to note that while the Union characterizes the time deadline as "procedural," it is not truly so. The time limit set forth in the Agreement is not analogous to a statute of limitations. Rather, the time bar is explicitly set forth in the Agreement and presumably was a bargained-for provision. In this sense, the deadline for filing grievances is substantive, not procedural.

arbitrability only if it finds that the arbitrator's decision "fails to draw its essence from the collective bargaining agreement").

In the instant matter, the district court vacated Arbitrator Witney's decision under the correct standard — the court found that the Witney Award did not draw its essence from the Agreement. The Union, however, argues that this is the wrong standard of review. Because the applicability of time limits provided in the Agreement is a procedural question, the Union contends, the district court must determine that the arbitrator acted in bad faith or was guilty of misconduct in order to vacate the award.

It is true that in cases where "procedural" decisions are reviewed, the Supreme Court has ruled that federal courts are empowered to set aside an arbitration award only when the arbitrator acted in bad faith or was guilty of misconduct. *United Paperworks Intern. Union v. Misco*, 484 U.S. 29, 40 (1987). But "procedural" decisions made in arbitration are different than those made in other contexts. As used in the arbitration setting, procedural decisions occur when the arbitrator is faced with an issue that is not clearly specified in the collective bargaining agreement *while resolving the merits of the dispute*. For example, the Supreme Court in *Misco* ruled that the arbitrator's decision to limit evidence proffered to resolve the merits of a dispute was procedural and best left to the arbitrator. *Misco*, 484 U.S. at 39-40. This was because the evidentiary decision was in effect "a construction of what the contract required when deciding discharge cases." *Id.* at 39.

To make such a "procedural" decision, it must previously be determined that the matter at issue is subject to arbitration. In *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557-58 (1964), the Supreme Court held that "*[o]nce it is determined . . . that the parties are obligated to submit the subject matter to arbitration*, 'procedural' questions which grow out of the dispute and bear on its final disposition

process. ***Not for the Union's letter to Wyandot of July 1, 1996, the Arbitrator would have denied Pollard's grievance upholding her termination.***

(*Id.* at 187-188) (emphasis added).

Although Arbitrator Witney recognized that the July 1st letter from the Union (advising the Company that it was proceeding to arbitration) did not meet the time limits set forth in the Agreement, he determined that the letter was "clear and unmistakable notice to Wyandot that the Union intended to arbitrate the Pollard grievance," (*id.* at 188), and "overcomes whatever defects [the Union] has in terms of time limits." (*Id.* at 189). Based on this analysis, Witney ruled that Pollard's grievance was arbitrable. (*Id.*).

The Company subsequently filed suit in the district court to vacate the Witney Award. In examining the Award, the district court recognized that courts have extremely limited authority to review arbitration awards. An arbitrator's factual errors and even misinterpretation of the Agreement are not subject to judicial reconsideration. An arbitrator is, however, without authority to disregard or modify the plain and unambiguous provisions of the Agreement. (J.A. 48).

The district court then found that the "Union failed to timely grieve Pollard's discharge," and that the arbitrator ignored the Agreement's deadlines "while acknowledging that the Company did not waive the deadline and had not been lax in enforcing the grievance procedure deadlines." (*Id.*) Thus, the lower court concluded:

[S]imply because the Union and Witney assert that the Witney Award draws its essence from the contract, does not necessarily make it so. The Arbitrator's finding that Pollard's grievance and the July 1, 1996 letter were timely fails to draw its essence from the [Agreement]. Furthermore, the Arbitrator ignored the terms of the [Agreement] in finding the grievance arbitrable. Thus, Arbitrator Witney's award will be vacated.

(*Id.* at 48) (internal citations omitted).

## II.    The Archer Award

Sue Pollard and other Wyandot employees were considered absent under the Company's no-fault attendance policy for missing work on January 7 and 8, 1996. (Pollard missed only January 8). The Union submitted a class grievance to arbitration before Arbitrator Archer claiming that the absences were due to bad weather and should be excused. On April 18, 1997, Arbitrator Archer agreed and ordered the Company to remove these infractions, including the infraction for Pollard's January 8th absence.

The Company allegedly did not comply with the Archer Award and failed to remove the January 8th absence from Pollard's record. Then, in May 1996, the Company discharged Pollard for excessive absences under its no-fault attendance policy. Under the no-fault policy, employees are terminated after 13 unexcused absences. Pollard had 14 unexcused absences including the January 8th absence.

After the Company filed suit in the district court to vacate the Witney Award, the Union counterclaimed to enforce the Archer Award as well as the Witney Award. The district court, however, held the Archer Award to be moot to the outcome of this case:

> Enforcement of the Archer Award would not change this result. As a result of vacating the Witney Award, the merits of Pollard's grievance and the specific enforcement of the Archer Award are no longer material to this case. Thus, the Union's counterclaim to have the Archer Award enforced is now moot. \*\*\*

> Enforcement of the Archer Award with regard to Pollard alone would not have prevented her dismissal. At the time of her discharge, she had fourteen occurrences on her attendance record when only thirteen are necessary to result in termination. Thus, enforcing the Archer Award would have no substantive effect on Pollard. It would

only help her if the Witney Award were to be upheld. Presumably, the Archer Award will still have effect in every other applicable circumstance. (J.A. 48, n. 6).

### DISCUSSION

The principal issues on appeal are whether (1) the Pollard grievance is arbitrable, (2) Arbitrator Witney's decision draws its essence from the Agreement, and (3) the Archer Award is moot regarding the issues of this case.

The Union argues that the district court erred in vacating the Witney Award because (1) it applied the wrong standard of review, and (2) it improperly substituted its interpretation of the Agreement for that of Arbitrator Witney. Further, the Union contends that the district court erred in finding the Archer Award to be moot even if it properly vacated the Witney Award because the enforcement of the Archer Award affects other remedies available to Pollard.

The Company argues that the district court properly vacated the Witney Award because (1) the Pollard grievance is not arbitrable, and (2) the arbitrator exceeded his authority by disregarding the plain and unambiguous provisions of the Agreement. Thus, according to the Company, the Witney Award did not draw its essence from the terms of the Agreement. Moreover, the Company contends that the district court properly held the Archer Award to be moot because it has no impact on the outcome of this case.

## I.    Did the District Court Apply the Wrong Standard of Review?

An arbitrator's decision on the issue of arbitrability will be affirmed "unless it fails to 'draw its essence from the collective bargaining agreement.'" *Vic Wertz Distributing v. Teamsters, Local 1038*, 898 F.2d 1136, 1140 (6th Cir. 1990) (citing *Eberhard Foods, Inc. v. Handy*, 868 F.2d 890, 891 (6th Cir. 1989)). *See also Interstate Brands v. Chauffeur, Teamsters Local 135*, 909 F.2d 885, 891 (6th Cir. 1990) (holding that a court could overturn an arbitrator's ruling on