**MARSHALL DURBIN POULTRY COMPANY, Plaintiff,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 1991, Defendant.**

**Nos. 2:99CV272PG, 2:99CV273PG.**

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Oct. 13, 2000.

Rick A. Hammond, The Kullman Firm, Jackson, MS, for Marshall Durbin Poultry Company, Inc., plaintiff.

Paul A. Koerber, Paul A. Koerber, Attorney, Jackson, MS, Roger K. Doolittle, Doolittle and Doolittle, Jackson, MS, for United Food and Commercial Workers Union, Local 1991, AFL—CIO on behalf of Zandria Wilson, defendant.

Paul A. Koerber, Paul A. Koerber, Attorney, Jackson, MS, Roger K. Doolittle, Doolittle and Doolittle, Jackson, MS, for United Food and Commercial Workers Union, counter–claimant.

Rick A. Hammond, The Kullman Firm, Jackson, MS, for Marshall Durbin Poultry Company, Inc., counter–defendant.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

Before the Court are Plaintiff's and Defendant's Cross Motions for Summary Judgment. Having considered these motions, the responses, the briefs of counsel, the cited authorities and applicable law, this Court finds as follows:

### FACTUAL BACKGROUND

These causes of action involve an employer's appeal of two arbitration awards. As the two cases contain similar legal issues, they have been consolidated. This Court has jurisdiction over this matter because it involves federal labor law. 28 U.S.C. § 1331. Plaintiff takes exception to the arbitrators' rulings and seeks to have the awards vacated. Defendant, by Cross–Motion, seeks to enforce the arbitrators' awards. The events leading to each of the two arbitration sessions are briefly recounted.

Zandria Wilborn's employment with Plaintiff was terminated on October 30, 1997 because she took an extended break from the production line. Wilborn, while on break, left the plant and, on her return trip, had a flat tire. Consequently, she was thirty minutes late returning from her thirty minute break (she was away from work a total of one hour, thirty minutes longer than permitted). Upon returning, her supervisor sent her to the front office where she was fired. In the preceding

four months, she had two or three other written warnings for unauthorized or excessive breaks. After finding the dispute arbitrable, the arbitrator concluded that Wilborn was unfairly discharged. Accordingly, the arbitrator awarded her reinstatement with back pay.

Lillie Bennett was discharged on December 10, 1997 for insubordination and intimidating behavior towards a supervisor. The incident that gave rise to arbitration occurred on December 9, 1997. Bennett's supervisor instructed her to clock out and go home. As instructed, Bennett proceeded to clock out and Ms. Barbara McCoy, the timekeeping supervisor, asked if she was done for the day. Bennett answered McCoy in what McCoy perceived to be an intimidating and insubordinate manner. After reporting the incident to the personnel director, Bennett was fired. The arbitrator, after finding the dispute arbitrable, concluded that Bennett had been unfairly discharged. Accordingly, she was reinstated without back pay.

### LEGAL ANALYSIS

As a general rule, the district court's "review of an arbitration award is extraordinarily narrow." *Antwine v. Prudential Bache Sec., Inc.,* 899 F.2d 410, 413 (5th Cir.1990). A court should set aside an arbitrator's decision "only in very unusual circumstances." *First Options v. Kaplan,* 514 U.S. 938, 942, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995). Courts should defer to an arbitrator's resolution of a dispute whenever possible. *See Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.,* 918 F.2d 1215, 1218 (5th Cir.1990). An arbitral award, under Fifth Circuit law, should not be vacated unless: "(1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers." *Gateway Tech.,*

*Inc. v. MCI Tel. Corp.,* 64 F.3d 993, 996 (5th Cir.1995) (citing 9 U.S.C. § 10(a)(1)–(4) (Supp.1995)).

Absent one of these factors, this Court does not have the authority to reconsider the merits of an arbitrator's award, even though the award may rest on an erroneous interpretation of fact. *See Six Flags Over Texas, Inc. v. I.B.E.W., No. 116,* 143 F.3d 213, 214 (5th Cir.1998) (citing *United Paperworkers Int'l Union, AFL—CIO v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 369–70, 98 L.Ed.2d 286 (1987)). Consequently, the court must affirm the arbitration award "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Six Flags,* 143 F.3d at 214. As long as the arbitrator's decision "draws its essence from the collective bargaining agreement and the arbitrator is not fashioning his own brand of industrial justice, the award cannot be set aside." *Id.* at 214 (quoting *Misco, Inc.,* 484 U.S. at 36, 108 S.Ct. 364). The arbitrator's award itself, however, "must have a basis that is at least rationally inferable from the letter or purpose of the collective bargaining agreement.... [It] must, in some logical way, be derived from the wording or purpose of the contract." *Bruce Hardwood Floors v. UBC Southern Council of Indus. Workers,* 103 F.3d 449, 451–52 (5th Cir.1997). In *Marshall Durbin Poultry Co. v. United Food & Commercial Workers Union, Local 1991,* Civ. Action No. 2:98CV241PG (S.D.Miss.2000), this Court construed existing precedent to affirm an arbitrator's decision even though the arbitrator's factual determinations gave the Court considerable concern.

Notwithstanding this restrictive purview, a district court "is free to scrutinize an award to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement." *Houston Lighting & Power Co. v. Int'l Bhd. Of Elec. Workers, Local Union No. 66,* 71 F.3d 179, 182 (5th Cir. 1995). An arbitrator "exceed[s] his con-

tractual authority by adding to, amending, and/or departing from the terms of the agreement." *Bruce Hardwood Floors,* 103 F.3d at 452. In other words, the CBA itself sets out the authoritative limits by which an arbitrator is bound. "Judicial deference ends where an arbitrator exceeds the express limitations of the contractual mandate". *Houston Lighting & Power Co.,* 71 F.3d at 181.

> The "rule in this circuit, and the emerging trend among other courts of appeals, is that arbitral action contrary to express contractual provisions will not be respected." *Delta Queen Steamboat Co.,* 889 F.2d at 604. If an arbitrator exceeds his authority, vacation of the judgment is appropriate .... if the language of the agreement is clear and unequivocal, an arbitrator is not free to change its meaning.

*Id.* at 181–82.

## WERE THE CASES ARBITRABLE?

Plaintiff asserts that neither of these cases was subject to arbitration under the terms of the Collective Bargaining Agreement (CBA). The same procedure was followed in both cases and Plaintiff relies on the same contractual language. Essentially, Plaintiff argues that the Union, in both cases, failed to follow the three step grievance procedure set out in the CBA. This CBA reads in pertinent part:

> The procedure for the settlement of grievances shall be as follows:
>
> (1) The employee *may first discuss the grievance with his supervisor* or other appropriate member of management.
>
> (2) *If not resolved in step one (1) the Union shall reduce the grievance to writing* specifying the facts behind the grievance and the Article(s) of this contract allegedly violated and presented (sic) to the Personnel Manager or his designated representative within five (5) working days following the occurrence of the event which gave rise to the grievance. Regardless of step one (1) if the grievance is not presented in writing within the time limit prescribed, it shall be considered finally settled and waived. The Personnel Manager or his designated representative shall meet with the chief steward within ten (10) working days in an attempt to resolve the grievance. The Company shall make a good faith effort to give its answer in writing within five (5) days after the meeting. Failure of the Company to give its written answer within the prescribed time shall constitute a denial of the grievance.
>
> (3) *If the grievance is not resolved in step 2, the Union Local President or his designated representative shall meet with the Company Director of Personnel* or his designated representative within ten (10) working days of the Company's answer in step 2 or the time for answering has expired. The Company shall make a good faith effort to give its answer in writing within five (5) days after the meeting. Failure of the Company to give its written answer within the prescribed time shall constitute a denial of the grievance.

CBA Art. IV(2) (emphasis added). Specifically, the Union, as noted by the arbitrators, failed to follow step three of the grievance procedure before requesting arbitration.

The CBA contains additional language relevant to the resolution of this dispute. The CBA provides that "Any grievance not resolved in the grievance procedure may be submitted to arbitration." CBA Art. V(1). Additionally, *"A request for arbitration must be made within fifteen (15) calendar days after* the Company has given its answer in writing in step 3 of the grievance procedure or the time for answering has expired or the grievance shall be deemed finally waived and settled." CBA Art. V(6) (emphasis added). "The arbitrator shall have no power to add to, subtract from, or modify any of the terms and conditions of this agreement." CBA Art. V(3). Finally, "the provisions of this agreement may be amended ... only by

mutual agreement, in writing...." CBA Article XV(5).

Based on this language, Plaintiff argues that since step three of the grievance procedure was skipped, arbitration was never appropriate. Plaintiff contends that although step one is discretionary, steps two and three are mandatory and must be followed before the parties can proceed to arbitration. Plaintiff argues that the express language in step three is mandatory in nature because it uses the term *"shall."* Therefore, step three must follow step two. Plaintiff also relies on the timing language in Article V(6). That language states that a request for arbitration *must* be made within fifteen days *after* the Company has given its answer in step three or after the time for answering has expired. Plaintiff asserts that this language establishes step three of the grievance procedure as a prerequisite to submitting the case to arbitration.

Two different arbitrators disagreed with Plaintiff. Each held the grievance arbitrable. George Gray, the arbitrator in Bennett's grievance noted that "nothing in the Collective Bargaining Agreement language suggests that all of the steps in the grievance procedure 'must' be followed or the grievance is forfeit (sic)." *Marshall Durbin Co. v. United Food & Commercial Workers Union Local 1991*, FMCS Case No. 980318–04402–8 at 10–11 (June 25, 1999). In support of his conclusion, the arbitrator cites Article V(1) of the CBA which provides, "any grievance not resolved in the grievance procedure may be submitted to arbitration," and notes that that provision contains no procedural requirements. *Id.*

Jerome Ross, the arbitrator in the Wilborn case, reached a similar conclusion. While not as lucid as arbitrator Gray, arbitrator Ross found that Plaintiff's nonarbitrability assertion is without merit. *Marshall Durbin, Inc. v. United Food & Commercial Workers Union, AFL—CIO*, FMCS Case No. 98–03507 at 9 (July 26, 1999). In essence, Ross notes that "the

contract language effectively permits a dispute to proceed to arbitration if a party does not respond to a grievance or an answer." *Id.*

Arbitrability is the pertinent inquiry in this case. As noted, an arbitrator's power is circumscribed by the four corners of the collective bargaining agreement. Just as this Court cannot decide a case beyond the limits of federal jurisdiction, an arbitrator cannot hear a case without having the power to do so. The arbitrator can only exercise power granted by the CBA. It is within the province of this Court to scrutinize an award to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement.

The Sixth Circuit, facing a similar question of arbitrability, under dissimilar facts, identified the manner in which an arbitrator can depart from the "essence of the agreement" and thus make his decision subject to vacation. *Wyandot Inc. v. Local 227, United Food & Commercial Workers Union*, 205 F.3d 922, 927–28 (6th Cir. 2000). That Court held that the arbitrator's decision should be vacated if "... an award conflicts with express terms of the agreement; ... or ... an award is based on general considerations of fairness and equity instead of the precise terms of the agreement." *Id.* at 929. As in the Fifth Circuit, "an arbitrator does not have unfettered discretion .... he is without authority to disregard or modify plain and unambiguous provisions." *Id.* at 929.

The Court concludes that the arbitrators exceeded their power by determining these cases arbitrable, and, under Fifth Circuit precedent, their decisions must be set aside. Although arbitrators are free to interpret ambiguous clauses of a collective bargaining agreement, they are not free to ignore express contractual language. Arbitrators may not ignore provisions that are clear and unambiguous. The word shall, contained in step three of the grievance procedure, is not ambiguous. It

is mandatory. It is imperative. It is not optional. The express terms of the CBA set forth a mandatory grievance procedure—one that was not followed in this case. Likewise, under the clear terms of the CBA, a request for arbitration *must* be made *after* step three of the grievance procedure has been followed. This language unequivocally establishes the three step grievance procedure as a prerequisite to arbitration. Since the grievance procedure was not followed, arbitration was inappropriate. The cases simply were not arbitrable.

An analogous situation exists in Title VII cases. Employment discrimination law, under Title VII, clearly establishes several requirements before an aggrieved employee can proceed in a district court. An employee first must file a complaint with the Equal Employment Opportunity Commission (EEOC). Courts have consistently held that it is the mandate of Congress that the parties first attempt mediation under the EEOC before proceeding in a district court. *See, e.g., Hood v. Sears Roebuck & Co.,* 168 F.3d 231 (5th Cir. 1999). Likewise, in the CBA, Plaintiff bargained for a grievance procedure. Plaintiff is contractually entitled to have disputes between the Union and the company settled through the grievance procedure, if possible. It is only after the grievance procedure is completed that the parties have the right to proceed to arbitration. If the Union does not follow through on the grievance procedure, then the Union has waived its right to arbitration. While Title VII cases involve a statutory right and this case involves a contractual obligation, under our system of laws, obligations created by express contractual language are entitled to deference as are statutory rights. In this case, as in Title VII cases, the preliminary prerequisites—prerequisites important in the dispute resolution process—must be followed before the parties can invoke the jurisdiction of another forum.

The Court would further note that Arbitrator Gray erred in basing his finding of arbitrability on the fact that step three of the grievance procedure was often handled informally by the parties. The plain language of the CBA reads, "The provisions of this agreement may be amended ... only by mutual agreement, in writing...." CBA Art. XV(5). The CBA does not contemplate an informal agreement to waive step three of the grievance procedure. Any such waiver must be in writing, and no such writing exists in this case. These two cases were not arbitrable.

IT IS ORDERED AND ADJUDGED that Plaintiff's Motions for Summary Judgment are GRANTED; Defendant's Motions for Summary Judgment are DENIED; and the arbitrator's decisions and awards are VACATED. A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

## JUDGMENT

This day this cause came on for hearing before the Court on Plaintiff's and Defendant's Cross Motions for Summary Judgment, the issues having been duly heard and a decision having been duly rendered by separate Memorandum Opinion and Order;

It is Ordered and Adjudged:

That Plaintiff's Motions for Summary Judgment are GRANTED;

That Defendant's Motions for Summary Judgment are DENIED;

That the arbitrator's decisions and awards are VACATED; and

That any other pending motions are dismissed as moot.