PAPER, ALLIED–INDUSTRIAL, CHEMICAL & ENERGY WORKERS, LOCAL UNION NO. 5–998, Plaintiff–Appellant,

v.

LWD, INC., Defendant–Appellee.

No. 02–5892.

United States Court of Appeals, Sixth Circuit.

May 25, 2004.

11. We also question whether the protection that CCDP is seeking can be based on such amorphous terms.

Herbert Segal, Jeffrey C. Trapp, Segal, Stewart, Cutler, Lindsay, James & Berry, Louisville, KY, for Plaintiff–Appellant.

Mark C. Whitlow, Whitlow, Roberts, Houston & Straub, Paducah, KY, for Defendant–Appellee.

LWD, Inc., Calvert City, KY, pro se.

Before MERRITT, DAUGHTREY and GIBBONS, Circuit Judges.

MERRITT, Circuit Judge.

In this action to enforce a labor arbitration award under 29 U.S.C. § 185, the District Court declined to enforce the arbitrator's award because the Union's notice of its grievance was untimely under the Collective Bargaining Agreement. The grievance related to the promotion of three individuals who were members of the bargaining unit to salaried, supervisory positions outside the bargaining unit.

In this Circuit, as the District Court concluded, the arbitrator's decision about the timeliness of a notice of grievance must "draw its essence" from the terms of the agreement of the parties. The arbitrator's finding of timeliness must be "derived in some rational way from the collective bargaining agreement." *Detroit Coil v. International Assn. of Machinists & Aerospace Workers,* 594 F.2d 575, 579 (6th Cir. 1979) (holding that the arbitrator exceeded his authority because no evidence established that the employer was notified of the grievance in a timely fashion); *General Drivers Warehousemen & Helpers v. Moog Louisville Warehouse,* 852 F.2d 871 (6th Cir.1988) (same); *Wyandot, Inc. v. Local 227, United Food & Commercial Workers Union,* 205 F.3d 922, 928 (6th Cir.), *cert. denied,* 531 U.S. 820, 121 S.Ct. 62, 148 L.Ed.2d 28 (2000) (holding that such timeliness issues specifically addressed by the collective bargaining agreement are not "procedural" questions left to the broad, unreviewable discretion of the arbitrator).

Article 10 of the labor agreement in question in this case requires that the grievance shall be asserted "within five days from the date of the discovery thereof." App. p. 91. The arbitrator found that the "grievance was filed on 2/29/2000" on a grievance discovered within the five day period. App. p. 12. On this issue the arbitrator stated:

> Quite frankly the evidence in this particular case on timeliness is in equipoise. One party avers and the other denies and there is no corroborating evidence of the testimony of the other side or of their side and it is difficult indeed for this arbitrator to determine from the evidence in this case exactly when the union knew of the activity complained of in the grievance. Because of the failure of evidence to corroborate the testimony of either side and because the evidence is in equipoise, I must find that the arbitrability defense of the company for naught. [sic]

The District Court found from its review of the transcript of the arbitration pro-

ceeding that the evidence was clearly not in equipoise but that the union knew of the promotions well before February 21, 2000. The transcript of the arbitration proceeding, as the District Court noted, shows that William David Brown, the human resources manager for the company, wrote a letter dated April 26, 1999 (union exhibit 3), not quite a year before the filing of the grievance, notifying the union of the company's intention to promote the employees to salaried nonbargaining-unit positions. App. p. 185. There was no reply from the union, and the promotions took place in May 1999, nine months before the grievance was filed.

Then there was a change in the administration of the local union in December 1999, when Jeff Harrell, an employee of the company, took over as the union's president from Jeff Ramage. It was Harrell, the new president, who filed the complaint in February 2000. The District Court found as follows with respect to Harrell's discovery of the promotions:

> Shop steward Robert Chatelain, testified that he was aware of the promotions in January of 2000:
>
> A. One day, it was January, this year, I was down in the supply room getting supplies for our office upstairs when I overheard Donnie Dean bragging to several people in the—
>
> . . .
>
> A. Bragging about being salary exempt . . .
>
> Transcript of Arbitration Hearing at 58–59.
>
> Chatelain then testified that he learned that three different persons were in the exempt category while performing bargaining unit work, and he reported the matter to Union President Jeff Harrell. He testified that he talked with Harrell within five days (Tr. 61) of

overhearing the supply room conversation.

App. p. 211.

After reviewing the arbitration proceeding and the arbitrator's findings, the District Court concluded as follows:

> Even if the arbitrator disregarded any and all of the Company's evidence of Union knowledge of the matter in 1999, all of the Union's evidence indicates that it knew of the matters no later than early February—which is completely inconsistent with a discovery no earlier than February 23. Quite contrary to the arbitrator's statement that "the evidence is in equipoise," the evidence is not amenable to the interpretation that the Union discovered the matter no earlier than February 23. Thus, to find the grievance timely, the arbitrator had to disregard the explicit requirements of the Collective Bargaining Agreement.

We find no error in either the findings or the conclusions of the District Court. Like the District Court, whose decisions we review de novo, we also conclude that the arbitrator's decision on the timeliness of the grievance was so far outside the evidence in the case and the explicit requirement of the agreement that it did not draw its essence from the bargain the parties made. We, therefore, AFFIRM the decision of the District Court.