*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0037P (6th Cir.)
File Name: 04a0037p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

STERLING CHINA COMPANY,
  *Plaintiff-Appellant,*

  *v.*

GLASS, MOLDERS, POTTERY,
PLASTICS & ALLIED
WORKERS LOCAL NO. 24;
GLASS, MOLDERS, POTTERY,
PLASTICS & ALLIED
WORKERS INTERNATIONAL
UNION, AFL/CIO,
  *Defendants-Appellees.*

No. 02-3773

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 01-01817—Peter C. Economus, District Judge.

Argued: October 30, 2003

Decided and Filed: February 3, 2004

Before: NELSON, CLAY, and COOK, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** Jeffrey A. Belkin, BELKIN, BILLICK & HARROLD, Cleveland, Ohio, for Appellant. Mimi C. Satter, SATTER & ANDREWS, Syracuse, New York, for Appellees. **ON BRIEF:** John T. Billick, Linda Hauserman Harrold, BELKIN, BILLICK & HARROLD, Cleveland, Ohio, for Appellant. Nancy Samone Sokol, Ronald F. O'Brien, TOMAR, O'BRIEN, KAPLAN, JACOBY & GRAZIANO, Cherry Hill, New Jersey, for Appellees.

  CLAY, J., delivered the opinion of the court, in which COOK, J., joined. NELSON, J. (pp. 20-26), delivered a separate concurring opinion.

───────────────

**OPINION**

───────────────

  CLAY, Circuit Judge. Plaintiff, Sterling China Company (the "Company"), appeals a June 4, 2002, order by the district court granting Defendants, Glass, Molders, Pottery, Plastics & Allied Workers Local No. 24, et al., (collectively, the "Union") its cross-motion for summary judgment seeking an order enforcing a supplemental arbitration award, dated April 4, 2001, which accords its union workers compensation for work previously performed. Plaintiff's claim, and subsequent motion for summary judgment, asserted that the supplemental arbitration award is null and void, since Defendants were time barred in requesting that the original arbitration award be vacated, modified, corrected or enforced pursuant to the Ohio Revised Code §§ 2711.09 and 2711.13. Because the Court believes the supplemental award to be a clarification not subject to Ohio Rev. Code §§ 2711.09 and

2711.13, we **AFFIRM** the district court's decision which enforced the supplemental award and denied the Company's motion for summary judgment.

## BACKGROUND

### Procedural History

On June 3, 2001, the Company initiated this case in a complaint for Declaratory Relief and an Application for Order Vacating an Arbitration Award in the Common Pleas Court for Columbiana County, Ohio. In Count I of its action, the Company seeks a declaration that any action to vacate, modify, correct or confirm an arbitration award issued in December of 1998 is time-barred pursuant to Ohio Rev. Code §§ 2711.09 and 2711.13, thus rendering the subsequent arbitration award issued on April 4, 2001 null and void. In the alternative, in Count II the Company seeks an order pursuant to Ohio Rev. Code § 2711.10 vacating the arbitration award issued on April 4, 2001. On July 26, 2001, the Union removed this case to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1441 (a), asserting the action arose under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185.

On August 16, 2001, the Union filed its answer and counterclaim. The counterclaim, pursuant to Section 301 of LMRA, seeks an order enforcing the 2001 arbitration award. The parties filed cross-motions for summary judgment on December 17, 2001. On June 4, 2002, the district court issued its order denying the Company's motion for summary judgment and granting the Union's motion for summary judgment to enforce the supplemental award. On July 3, 2002, the Company filed its notice of appeal.

### Substantive Facts

The Company is engaged in the production of fine pottery and chinaware at its facility in Wellsville, Ohio. The Union, headquartered in Media, Pennsylvania, and its local affiliate, located in Wellsville, Ohio, represent the Company's production and maintenance employees. On February 6, 1993, the Company and the Union entered into a collective bargaining agreement ("CBA") which contained a grievance procedure providing that disputes arising between the parties under the agreement would be submitted for arbitration. The Company's "Sterling China/GMP Job Evaluation System," which is set forth in the Company's Job Evaluation Manual, was incorporated into Article 22, Section 7 of the CBA. Pursuant to the Agreement: "[t]he Company has the right to combine present or create new job classifications. When such present classifications or new classifications are combined or created, the rate for such classification shall be subject to negotiations between Company and Union using the [] Job Evaluation System." (J.A. at 160-184.)

Under the system, a position is assigned to a Wage Grade commensurate with the degree of difficulty attached to the following job related factors: experience, job knowledge, initiative and ingenuity, physical demand, mental or visual demand, working conditions, and job responsibilities. If the parties cannot agree on a Wage Grade after their evaluation of a job, either party may file a grievance.

In the fall of 1994, the Company began production of a specialty line of glost (glazed) products for the Longaberger Company. Employees who performed work on the Longaberger, specifically the selection or boxing of the specialty items, were paid the Wage Grade 1 base rate of the Glost Utility position, or the Wage Grade 2 base rate of the Glost Selector position.

On or about November 3, 1995 the Union filed a grievance citing the Company's violation of Article 22, Section 7 of its CBA regarding the applicable wage rate for employees who performed Longabergerware packer's duties, contending that the correct rate was the Wage Grade 3 base rate of the Glost packer position ($7.585) "plus bonus amount." An arbitration proceeding commenced in accordance with the grievance procedures of the CBA. Arbitration hearings were conducted on December 5, 1996, November 14, 1997, and April 21, 1998. On December 28, 1998, the arbitrator delivered its opinion and award, sustaining the Union's grievance, holding that the affected employees should be paid "the difference between the wage rate they received and the higher base wage rate that had been paid to the Glost Packers" since the fall of 1994. The award indicated that the "job duties" of the "employees who worked on the Longaberger specialty items are 'reasonably related to the essence of the duties of the Glost Packer.'" With respect to the "incentive rates" sought by the Union, however, the arbitrator was persuaded by the Company's evidence that the affected employees were not entitled to such "incentive rates." Therefore, the Company was required to pay "any and all employees, who have performed Glost Packer work on the Longaberger specialty ware since the fall of 1994, the difference between the wage rate they received and the higher base wage rate that has been paid to the Glost Packer."

The Company objected, by letter, on January 12, 1999, because the award provided back pay beyond the date on which the grievance had been filed. The arbitrator responded that according to Article 22, section 7 of the CBA, any change in rates of pay will be retroactive to the "date of the change or new classification," and based on the change or new classification of the Glost Pack workers on the Longaberger specialty ware that occurred in the fall of 1994, the remedy is retroactive to the fall of 1994. The arbitrator also stated that

the Company's objection to the retroactive date would call for a change in the award which would be contrary to the principle of *functus officio*.[1]

Plaintiff then requested an audit from the Union of the affected employees' hours in order to calculate back pay. In a letter dated, October 1, 1999, the Union indicated that 25 employees worked a total of over 24,000 hours in regular and overtime and that they were still auditing the numbers. In a letter dated, October 14, 1999, the Company calculated the pay difference at $.25 per hour and offered to pay that amount for a total of 25,000 hours to account for regular and overtime hours. The Company also quoted the language of the arbitration award that held the affected employees were not entitled to the incentive rates.

The Union wrote back in a letter dated November 4, 1999, stating that the affected employees worked 19,001.625 straight hours and 2,359.5 overtime hours on the Longaberger work and that the Union did not "share [the Company's] interpretation of the arbitrator's award." By letter dated November 15, 1999, the Company offered to pay the difference between the Wage Grade 1 rate and the Wage Grade 3 rate, which was $.26 per hour for straight time and $.39 per hour for overtime, which totaled $5,860.63, according to the Company.

On December 22, 1999, the Union wrote a letter to the arbitrator, carbon copying the Company, which stated: "It is [our] understanding that you are retaining jurisdiction. As of this date, the parties have not reached agreement as to the proper remedy. Therefore, we are requesting available dates for the purpose of getting your opinion regarding the remedy after appropriate arguments have been made." On

---

[1] *See* section I.B, *infra*.

December 27, 1999, the Company responded to the Union's letter, stating that the arbitrator's award was clear and unambiguous with regard to the issues involving back pay and that there was no need or basis for an additional hearing. In a letter to the arbitrator, the Union stated: "Contrary to the position taken by [the Company's counsel], an ambiguity does exist concerning the interpretation of the remedial portion of your award," and that the Union "thinks [] a hearing is necessary to establish the precise compensation paid to Packers during the back pay period." Thereafter, the arbitrator convened a supplemental hearing on October 22, 2000.

It was the Company's position that the arbitrator had no authority to hold an additional hearing, accept additional evidence or issue a supplemental decision or award; therefore, the Company made no appearance except to object to the proceedings in their entirety.

The arbitrator issued a supplemental award on April 4, 2001. The decision summarized the previous award and the position of the parties; then the arbitrator explained his previous intentions:

> In order to equal the wage rate equal to Glost Packer's rate, by necessity the Longaberger employees are required to be paid the same rate as the Glost Packers, rather than a rate which is $3 an hour lower than the Glost Packer. Moreover, I also included in my award that the 'grievance is sustained.' By sustaining the grievance, I have sustained the Union's requested remedy which included the $3 add-on.

(J.A. at 259-262).

In response to the Company's claim that the Union's request was precluded by the doctrine of *functus officio*, the

arbitrator explained, "[t]he doctrine of *functus officio* prohibits reopening the merits of the dispute between the parties. . . . I am not determining an issue involving the merits which have already been decided." *Id.* The arbitrator continued to point out that he retained jurisdiction of the proceedings, "should any disputes arise between the parties with respect to the implementation of this remedy." Therefore, the arbitrator maintained that the supplemental award clarified the original award and the doctrine of *functus officio* did not apply.

## DISCUSSION

We review *de novo* the district court's grant of summary judgment. *Beacon Journal Pub. Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596, 599 (6th Cir. 1997). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must review the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The judge is not to weigh the evidence and determine the truth of the matter, but rather determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Although this court requires a *de novo* review, the deference that federal courts must give to the settlement of a labor dispute by an arbitrator is substantial. *DBM Tech., Inc., v. Local 227, United Food & Commercial Worker Int'l Union*, 257 F.3d 651, 656 (6th Cir. 2001). The Supreme Court has made clear that courts must give an arbitrator's decision substantial deference since it is the arbitrator's construction of the collective bargaining agreement, not the court's construction, to which the parties have agreed.

*Wyandot, Inc. v. Local 227, United Food & Commercial Workers Union*, 205 F.3d 922, 928-29 (6th Cir. 2000) (citing *United Paperworks Int'l Union v. Misco*, 484 U.S. 29, 37-38 (1987)). Indeed, an arbitrator's factual errors and even misinterpretations of a collective bargaining agreement are not subject to reconsideration by the court. *Id*.

I.

### A. *The Application of the Ohio Revised Code's Statute of Limitations*

The Union removed this case to federal court since the action arose under § 301 of the LMRA. Actions filed under § 301 of the LMRA are subject to the appropriate state statute of limitations, since it contains no federal limitations provision of its own. *Aloisi v. Lockhead Martin Energy Systems*, 321 F.3d 551, 556 (6th Cir. 2003) (citing *United Parcel Serv. v. Mitchell*, 451 U.S. 56, 60 (1981)). The appropriate statute of limitations utilized in an Ohio case seeking to challenge a party moving to vacate, modify, or correct an arbitration award is the Ohio Revised Code ("O.R.C.") § 2711.13, *United Steel Workers of America, Local 4839 v. New Idea Farm Equipment Corp.*, 917 F.2d 964, 967 (6th Cir. 1990), which provides:

[a]fter an award in an arbitration proceeding is made, any party to the arbitration may file a motion in the court of common pleas for an order vacating, modifying, or correcting the award as prescribed in sections 2711.10 and 2711.11 of the Revised Code. Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is delivered to the parties in interest, as prescribed by law for service of notice of motion in an action.

Alternatively, in order to confirm an award once final, parties must move under O.R.C. § 2711. 09, *Id.*, which provides:

[a]t any time within one year after an award in an arbitration proceeding is made, any party to the arbitration may apply to the court of common pleas for an order confirming the award. Thereupon, the court shall grant such an order and enter judgment thereon, unless the award is vacated, modified, or corrected as prescribed in sections 2711.10 and 2711.11 of the Revised Code.

Therefore, the proper characterization of the action determines its timeliness. *New Idea*, 917 F.2d at 967.

The Company asserts that any action taken by the Union, at this time, is barred by the O.R.C. statute of limitation. The Company further argues that the arbitrator was without authority to re-hear this dispute and re-issue another arbitration decision. However, as this court stated in *New Idea*, the proper characterization of the events in the instant case is necessary to determine timeliness and the proper authority. *Id.* We will deal with timeliness first.

After the first arbitration award was issued in December of 1998, the parties went back and forth for almost a year disputing the proper application of the issued remedy. The Union understood the arbitration's conclusion to require that Longaberger workers be equitably compensated to the degree that the existing Glost Packers have been compensated since the fall of 1994, which included more than the $.26 per hour difference as determined by the Job evaluation chart. Apparently, the $3/per hour "add on" that was requested, and clarified in the supplemental arbitration award, was part of the compensation the Union understood to be included in the difference in wage rate.

Conversely, the Company's understanding was that the difference in wage rate it was ordered to pay the Union employees, merely included the $.26/per hour increase as determined by the Job Evaluation chart, since the arbitrator made a point in the initial arbitration award to state that he was "persuaded by the Company's evidence with respect to the reasons for not applying the incentive rate to the Packer's work in the Longaberger ware." For these reasons, clarification of the arbitration award was necessary to move forward in the proceedings. By way of literal interpretation, clarification of an award is neither controlled by O.R.C. §§ 2711.09 nor 2711.13.[2]

Traditionally, if an arbitration award is ambiguous and in need of clarification, courts are made to remand back to the arbitrator to clarify its meaning and intent. *M & C Corp. v.*

---

[2] O.R. C. §§ 2711.09 and 2711.13 specifically require parties to file motions with the court of common pleas within the time frame indicated in the language of the statute to guarantee each provision's respective relief. There is no indication in the statutory language that these time frames affect a party's ability to reconcile clarifications of an award with its arbitrator. Nevertheless, the initial inquiry by the Union to the arbitrator requesting clarification was within one year of the arbitration award, thus not precluding mandatory confirmation upon a possible motion, pursuant to O.R.C. §2711.09, by the Union if they so chose.

Additionally, the Company argues that a request for clarification does not effectively "toll" the statute of limitations for the filing of a subsequent motion to vacate, modify, correct or confirm, citing *Galion v. Am. Fed'n of State, Cty. & Mun. Emp. Ohio Council 8, AFL-CIO, Local 2243, et al.*, 646 N.E.2d 813, 815-16 (1999). This matter does not involve an issue of "tolling," nor did the Union attempt to modify, vacate, correct or confirm the August 1998 award, by way of a motion under O.C.R. §§ 2711.09 or 2711.13. Furthermore, *Galion* is distinguishable since the arbitrator there did not retain jurisdiction to clarify ambiguities, whereas in the instant action, the arbitrator did retain such authority. The Court need not analyze the parameters of a situation where the arbitrator does retain jurisdiction under the same factual scenario as *Galion*, since the instant case differs in both respects.

*Erwin Behr GMBH & Co.*, 326 F.3d 772, 782 (6th Cir. 2003) (holding that a "remand is proper both at common law and under the federal law of arbitration contracts, to clarify an ambiguous award or to require the arbitrator to address an issue submitted to him but not resolved by the award" (quoting *Green v. Ameritech Corp.*, 200 F.3d 967, 977 (6th Cir. 2000))). Although, the Union's request for clarification did not come through a request to remand in the federal courts, it is important to recognize that the parties involved needed clarification before any appropriate recourse of federal or state actions became necessary. *See New Idea*, 917 F.2d at 969 (citing *United Steelworkers v. Timken Roller Bearing Co.*, 324 F.2d 738, 740 (6th Cir. 1963) (holding that a "court is not required to enforce an award that is not clear as to its meaning")).

Therefore, the Union did not violate the three month statute of limitations to vacate, modify or correct an arbitration award under O.C.R. § 2711.13 since the Union did not request such a remedy. Additionally, the Union did not violate the required one-year time frame in which to receive a guaranteed confirmation of an arbitration award under O.C.R. §2711.09, as that also was not the requested remedy. The Union did request, however, clarification of the award, as its remedial meaning was clearly in dispute. To fully understand the breadth of the arbitrator's power to clarify, we visit the issue as to whether or not the arbitrator exceeded his power in clarifying and subsequently issuing a supplemental award.

## B. *The Arbitrator's Powers Under the Doctrine of Functus Officio*

The doctrine of *functus officio* is defined as "having fulfilled the function, discharged the office, or accomplished the purpose, and therefore of no further force of authority." *Ameritech*, 200 F.3d at 976 (quoting BLACK'S LAW

DICTIONARY 673 (6th ed. 1990)). This doctrine has specifically been applied to the breadth of an arbitrator's authority whereas in "most cases arbitrators' appointments continue until they have heard the case, made a final award, and disclosed it to both parties. At this time their task is performed, their duties under the arbitration agreement are discharged, and their arbitral authority is at an end." *Id.* (citing III MACNEIL, SPEIDEL & STIPANOWICH § 37.6.1.1, at 37:25). However, the doctrine of *functus officio* contains several exceptions, such as (1) where the arbitrator can "correct a mistake which is apparent on the face of the award;" (2) where "the award does not adjudicate an issue which has been submitted, then as to the issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination;" and (3) where "the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify." *Industrial Mut. Ass'n, Inc. v. Amalgamated Workers, Local No. 383*, 725 F.2d 406, 412 n.3 (6th Cir. 1984) (quoting *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 573 (3d Cir. 1967)). This Court has recognized the need for an arbitrator's "clarification of an ambiguous award when the award fails to address a contingency that later arises or when the award is susceptible to more than one interpretation." *Ameritech*, 200 F.3d at 977 (citing *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Local 182B v. Excelsior Foundry, Co.*, 56 F.3d 844, 847 (7th Cir. 1995) ("holding that uncertainty in an arbitration award regarding which party would pay for the employee's rehabilitation justified the arbitrator's extension of the deadline fixed in the original award, and explaining that this question 'can fairly be characterized' as 'interpretive,' [thus] 'allowing [the plaintiff] to crawl through the loophole in the doctrine of *functus officio* for clarification or completion, as distinct from alteration of the arbitral award.'")).

The Company disputes the Union's reliance on cases like the Seventh Circuit's *Excelsior Foundry* case, and this Court's *Ameritech* case, claiming they are distinguishable to the instant action; however, the district court was correct in its view that the arbitrator in this case fell squarely within the authority, followed by this Court, to properly clarify the order at issue. Very much in line with *Excelsior*, the parties here were confronted with an unexpected contingency after the award was issued: the matter of the exact definition of the "higher base rate" that would be equivalent to the rate received by the Wage 3 Glost Packers' position since the fall of 1994. The Company can not say that the required remedy was "clearly determined" by the original arbitral award when the parties were clearly in dispute as to the interpretation of the remedy, and there was no numerical determination in the award.

Furthermore, the arbitrator's retention of jurisdiction further supports its actions as falling squarely within the exceptions of the doctrine of *functus officio*. The December arbitral award concluded with the arbitrator's assertion that he "retains jurisdiction should any disputes arise between the parties with respect to the implementation of this remedy." In correspondence from both parties, the arbitrator's retention of jurisdiction was acknowledged, therefore leaving this issue unchallenged.

**C.  *The Validity of the April 4, 2001 Supplemental Arbitral Award***

Alternatively, even if a clarification was within the arbitrator's power, the Company argues that the supplemental award exceeded that power and should be vacated, claiming it was issued in violation of O.R.C. § 2711.10 (D), which states in pertinent part:

[I]n any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

. . . .

(D) The arbitrators exceed their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

In order to determine whether or not the arbitrator exceeded his powers we must acknowledge the breadth of those powers, and how they were applied. As stated above, the arbitrator has the power under the exception of the doctrine of *functus officio* to go back and "clarify" an ambiguous or incomplete portion of an award. *Behr*, 326 F.3d at 782. Now we look to the difference between the December 1998 arbitration award and the April 2001 arbitration award to determine whether or not the latter is in fact a clarification.

As to the original December 1998 award, the Union asserted that the remedy portion was unclear regarding precisely how much each affected Longaberger Packer would receive in compensation based on the arbitrator's analysis of the two jobs, the Longaberger Packers and the Glost Packers of traditional ware, and its acknowledgment of their equivalency. The ambiguity arises in what seems to be the original award's denial of any incentive rates above and beyond the documented base rate for a Wage 3 Packer, as set forth in the Job Evaluation Manual. The arbitrator acknowledged that the Union failed to submit evidence regarding the application of the incentive rate to the Glost Packer work on the Longaberger ware, while also acknowledging that the Company submitted persuasive evidence on the reasons the incentive should not be applied. Nevertheless, the incentive rate was never defined in the first

award, nor was the "higher base rate" to which the Longaberger Packers were entitled, making such compensation equivalent to the traditional Glost Packers, as expressed by the arbitrator.

In the supplemental award in April 2001, the arbitrator clarified the dispute over what the "higher base rate" encompassed. Since it is undisputed that the original award increased the Longaberger rate to Wage Grade 3, the real question was whether or not that included what the Union assumed to be a $3 per hour "add on" rate. The Company argues that the $3 "add on" rate is the equivalent to the incentive rate to which the original arbitration award did not assent. By applying this rate in the supplemental award, the Company argues the award was altered or changed, thus violating O.C.R. § 2711. 10.

Conversely, the Union argues that the $3 "add on" is subject to different criteria than the incentive rate and that the "add on" was necessary to complete what would have been an incomplete award. As clarification, the April 2001 award defines its previous award as to the exact amount entitled to the Longaberger Packers. The arbitrator specifically states that "in the award I refer to the 'higher base wage rate' that has been paid to the Glost Packer. I do not refer to the Grade III wage rate of the Glost Packer . . . The higher base wage rate includes the $3 add on which has been paid to the Glost Packers for a period of years." (J.A. at 260). The arbitrator further clarifies his award by stating:

[i]t is important to underscore that I refer to the Longaberger employees warranting a Labor Grade III position and a wage rate equal to the Glost Packers' rate. In order to equal the wage rate equal to the Glost Packers' rate, by necessity the Longaberger employees are required to be paid the same rate as the Glost Packers,

rather than a rate which is $3/hour lower than the Glost Packer.

(J.A. at 260).

The arbitrator finalized his clarification by stating that he acknowledged his refusal in applying the incentive rate to the award; however, "in making [that] statement, the incentive rate is to be distinguished from the $3 add on which replaced the incentive rate and which has been paid to Glost Packers." (J.A. at 261). Therefore, given the need for the award's clarification with respect to the proper compensatory remedy, in addition to the arbitrator's power to properly go back and clarify any inconsistencies of interpretation, the supplemental award is appropriate and valid under O.C.R. §2711.10 (D). Because the arbitrator's authority allows for clarification of an award subject to multiple interpretations, the issuance of the supplemental award was well within the arbitrator's power and was not subject to any limitations found in O.R.C. §§ 2711.09 or 2711.13.

## II.

The Company additionally argues that the arbitrator's 2001 award must be vacated because it fails to draw its essence from the CBA. However, in the instant case, the arbitration award is not a violation of the arbitrator's express authority as it does draw its essence from the CBA.

This Court's jurisdiction to review an arbitrator's decision is predicated on an allegation that the arbitrator reached an erroneous decision. *Teamster Freight Emp. v. Bowling Green Express, Inc.*, 707 F.2d 245, 256 (6th Cir. 1983). We review the arbitrator's decision only to determine whether the arbitrator was "arguably construing or applying the contract and acting within the scope of his authority." *Misco*, 484 U.S. at 38. If the arbitrator's award "draws its essence from

the bargaining agreement," and is not merely the arbitrator's "own brand of industrial justice," the award is legitimate. *Beacon*, 114 F.3d at 599 (quoting *United Steel Workers of Am. v. Enterprise Wheel & Car Co.*, 363 U.S. 593, 597 (1960)). An arbitrator's award fails to draw its essence from the agreement when:

(1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on 'general considerations of fairness and equity' instead of the exact terms of the agreement.

*Id.* at 600 (quoting *Dallas & Mavis Forwarding Co. v. Local Union No 89*, 972 F.2d 129, 134 (6th Cir. 1992)).

It is indisputable that the CBA included the term "add on" therein, with regard to wages. (J.A. at 35-36). It is also indisputable that payment of a "base wage" is not the sole means of compensation allowed for in the CBA. By specifically stating the means by which the Company must accurately compensate the Longaberger Packers (since the intention was to require equivalent compensation), the award itself did not conflict with express terms of the agreement or impose additional requirements not expressly provided for in the agreement. *See Wyandot*, 205 F.3d at 929 (holding that the arbitration award violated all four factors that dictated its authority, as it violated express timeliness provisions, imposed broad mandatory accommodations for all written arbitration demands, inaccurately found the grievance arbitrable, and ignored the precise terms of the agreement in favor of equity, thus clearly departing from the essence of the agreement and was appropriately vacated).

The Company terms the supplemental award, referencing the $3 add on, as a misinterpretation of its meaning within the

CBA. Nevertheless, courts ultimately cannot weigh the merits of the grievance or reverse simply because they disagree with the result of the interpretation of the arbitral award. *Beacon*, 114 F.3d at 599-600. Given that the intent of Article 22, Section 7 of the CBA was to ensure that all workers would be accurately compensated for changed duties that would in certain circumstance be unknown to the workers, it follows that the supplemental arbitration award fulfills that intent by clarifying the prescribed compensation due to the Longaberger workers. Therefore, whether the arbitrator correctly determined the award or not, the district court's ruling may not be reversed on review since the supplemental award ultimately drew its essence from the CBA.

## CONCLUSION

For the aforementioned reasons, this Court **AFFIRMS** the district court's order.

_____

## CONCURRENCE
_____

DAVID A. NELSON, Circuit Judge, concurring. I agree that the Union's effort to enforce the 2001 version of the arbitration award is barred neither by the *functus officio* doctrine nor by the Ohio statute of limitations to which we must look in the absence of an applicable federal statute. Enforcement would be barred, however, if the decision rendered by the arbitrator in 2001, instead of being a clarification of a point left ambiguous in the 1998 award, constitutes a reversal of the "incentive rate" portion of that award. I write separately to outline my reasons for concluding that the 2001 decision is in fact a clarification of the earlier award and not a reversal.

I begin with the collective bargaining agreement, Article 21 of which establishes certain "base wage rates," effective February 15, 1993, for each of six different wage grades. (An appendix to the agreement parcels out numerous individual job classifications among the six wage grades; under the heading "Glost Warehouse," the appendix identifies a "Packer" classification that is assigned to "Wage Grade # 3" — albeit at a higher hourly rate ($7.35) than most other wage grade 3 jobs.) Article 21 goes on to prescribe a series of "general wage increases" that are to be "added to the base daywork rate" and "factored into base incentive rates" in accordance with a timetable set forth in the agreement. As far as the "Packer" classification is concerned, the appendix provides for periodic increases that culminate in a base rate of $7.67 per hour effective August 12, 1996.

The traditional glost packer job was an "incentive job," as company official Eric Fadale evidently explained in testimony before the arbitrator. The traditional glost packers

initially received incentive pay geared to "down time and the amount of cartons that were packed in a given time frame," according to a declaration executed by Mr. Fadale in December of 2001.[1]

In his 1998 award sustaining the union's grievance, the arbitrator held that although the employees who had packed Longaberger ware were entitled to the wage grade 3 rate for glost packer work, they were not entitled to the incentive rate:

> "I am persuaded by the Company's evidence with respect to the reasons for not applying the incentive rate to the Packers' work on Longaberger ware. In establishing an incentive rate, the mechanized nature of the Glost Packer's work on traditional ware is a factor which is entitled to great weight. Moreover, also of importance to the establishment of an incentive wage rate are such factors as a time study, proper sequence of the job and the allowances which are made, for example, with respect to 'downtime' or 'machine breakdowns'. Although these factors are of great weight in establishing an *incentive* rate for the Glost Packer of traditional ware, . . . the employees who have worked on the Longaberger ware are entitled to the same *base* wage rate as the Glost Packers of traditional ware. Accordingly, employees who have performed the Longaberger job since the fall of 1994 [when the Longaberger line was introduced], are entitled to receive the difference between the base wage

---

[1]This declaration was intended to apprise the district court of the substance of testimony given by Fadale before the arbitrator on April 21, 1998. The district court questioned whether "declarations" can be given any consideration in summary judgment proceedings, since Rule 56(c), Fed. R. Civ. P., authorizes consideration of "affidavits," not declarations. Under 28 U.S.C. § 1746, however, an unsworn declaration has the same force and effect as an affidavit if it recites — as Fadale's declaration does — that it was executed "under penalty of perjury."

rate that they were paid and the higher base rate that has been paid to the Glost Packer of traditional ware." (Emphasis supplied.)

The evidence by which the arbitrator was persuaded that the incentive rate applicable to traditional glost packers should not be applied to Longaberger workers is summarized in the Fadale declaration as follows:

> "In good industrial engineering practices, incentive systems are not portable. They cannot be moved from one job to the next just as a result of similarity. Incentive systems are designed for a specific job; they are based on the parameters of that job such as the amount of work that is being done if it is a piecework plan, parameters such as down time that would be incurred on the job, different things like that. The equipment would help drive the setup of it; it may not be a parameter in the determination of monies from the incentive system, but it would be a factor in setting up the initial incentive system."

The incentive pay system for traditional glost packers was changed, at some point in time, to a system that simply added a fixed dollar amount to the packers' hourly base rate. As the Fadale declaration explains,

> "The numbers that were typically arrived at as a result of [the original] incentive system [were] turned into an hourly amount as a result of the existence of the previous incentive system. That amount is added on to the packers' base rate."

Because the amount of the add-on ($3 per hour) approximated numbers that had typically been produced under the incentive system designed for the traditional glost packing line, Mr.

Fadale maintained that the add-on "could not be transferred" to the Longaberger work.

The arbitrator clearly was persuaded that the incentive rate could not be transferred, but it is not clear that he was persuaded the $3 add-on could not be transferred either. The company argues in its brief on appeal that the add-on "*is* the incentive rate," but Mr. Fadale himself drew a distinction between the variable numbers generated by the incentive system and the fixed number by which the base rate was increased after the incentive system was turned into a fixed-hourly-amount system.

If I thought that the arbitrator understood the change in systems to have occurred before the fall of 1994, when the company began producing items for Longaberger, it would be difficult for me to avoid the conclusion that in saying the incentive rate could not be applied to the Longaberger work, the arbitrator must have meant that the $3 add-on could not be so applied. If there was no longer a true incentive system in place when the Longaberger line was introduced, what could the arbitrator possibly have been referring to, when he held "the incentive rate" inapplicable to Longaberger workers, other than the add-on that had evolved from the incentive system? If, on the other hand, the arbitrator understood that the incentive system was still being used in the fall of 1994, it is conceivable that the arbitrator was focusing on that system and was not focusing on the $3 add-on that subsequently replaced it.

I have found nothing in the record establishing what (if any) evidence was presented to the arbitrator as to when the variable incentive pay was replaced by the fixed add-on. Reading the arbitrator's awards with the deference that must be accorded them, however, I conclude that the arbitrator must have understood the change to have occurred after the startup of the Longaberger line. And if that is what he

thought, I believe that what the arbitrator said in 2001 can be reconciled with what he said in 1998.

The arbitrator did not say, in 2001, that Longaberger workers were entitled to the incentive rate that the packers of traditional glost ware were receiving, *ex hypothesi*, in the fall of 1994. Instead, as I understand him, he was saying that when the packers of traditional ware began receiving a composite rate determined by adding a flat $3 per hour to the base pay specified in the collective bargaining agreement, the Longaberger workers were entitled to begin receiving the same composite rate. The original decision not having made it clear whether Longaberger workers would or would not receive the composite rate once it was introduced for workers handling the traditional product, the arbitrator could have gone either way on this question without contradicting the original award.

I myself might think it wrongheaded, after denying Longaberger workers the incentive pay received by their counterparts on the traditional product line, to award the Longaberger people the $3 add-on when it replaced the incentive pay. It was not my opinion, however, by which the parties to the collective bargaining agreement undertook to be bound; what they bargained for was the arbitrator's opinion, not mine. And I am not so sure it would be unreasonable to conclude that the considerations which precluded the transfer of a fluctuating incentive rate did not apply to the transfer of a rate which, unlike the incentive rate, never fluctuated in accordance with output or downtime. In any event, this is precisely the sort of determination the parties agreed to let the arbitrator make.

Regardless of one's opinion as to its soundness, the 2001 decision was, in my judgment, a clarification of an ambiguity in the original award. As such, for reasons ably explained in

Judge Clay's opinion, the 2001 decision does not run afoul of the *functus officio* doctrine.

Under Ohio caselaw, moreover, the union's request for enforcement of the arbitral award as clarified does not run afoul of Ohio Revised Code § 2711.09. Because the statute uses the word "may" in providing that within a one year period after an award has been made "any party to the arbitration may apply to the court of common pleas for an order confirming the award," an Ohio court of appeals has held that "the common pleas court has the discretion to permit summary application [for "confirmation," which has the effect of turning the award into a court judgment] within a reasonable time beyond one year for good cause shown, if no prejudice occurs to the opposing party . . . ." *Russo v. Chittick*, 548 N.E.2d 314, 317 (Ohio App., Cuyahoga, 1988). Here there was good cause for the union's delay in applying for enforcement of the 1998 award, and the company was not prejudiced by the delay. As far as the 2001 decision is concerned, of course, there was no delay; the decision is dated April 4, 2001, and the union filed its enforcement application on August 16, 2001.

Ohio Revised Code § 2711.13, which says that after an arbitration award has been made any party to the proceeding "may file a motion in the court of common pleas for an order vacating, modifying or correcting the award," uses mandatory language in establishing a deadline: "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is delivered to the parties in interest . . . ." *Russo* provides no escape from the three-month deadline for service of a motion to correct an award. I do not read the union's counterclaim as asking for correction of the award at issue here, however. What the union asked for was a court order "enforcing the arbitrator's award . . . ." Ohio Revised Code

§ 2711.13 has no application to a judicial enforcement proceeding.

For all of the foregoing reasons, I concur in the affirmance of the judgment rendered by the district court.